IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

CHARLES YEAGER,

    Plaintiff,

V.                                                CIVIL ACTION NO. 3:05-0050

JO ANNE BARNHART,
Commissioner of Social Security,

    Defendant.

## MEMORANDUM ORDER

In this action, filed under the provisions of 42 U.S.C. §§405(g) and 1383(c)(3), plaintiff seeks review of the final decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income based on disability. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

Plaintiff protectively filed his applications on March 28, 2003, alleging disability commencing July 27, 2002, as a consequence of problems in the right ankle, both knees and neck, and Type 2 diabetes. On appeal from initial and reconsidered denials, an administrative law judge, after hearing, found plaintiff not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review. Thereafter, plaintiff filed this action seeking review of the Commissioner's decision.

At the time of the administrative decision, plaintiff was forty-nine years of age and had obtained a high school education. His past relevant employment experience consisted of work as an automobile salesman. In his decision, the administrative law judge determined that plaintiff suffers from "obesity, degenerative arthritis, and diabetes mellitus," impairments he found severe. Though concluding that plaintiff was unable to perform his past work,[1] the administrative law judge determined that he had the residual functional capacity for a limited range of light level work. On the basis of this finding, and relying on Rule 202.21 of the medical-vocational guidelines[2] and the testimony of a vocational expert, he found plaintiff not disabled.

Review of the record reveals deficiencies which will require remand for further proceedings. As the administrative law judge noted, the earliest evidence of treatment in the record is from June 24, 2003, when plaintiff saw Dr. Saxe with complaints of uncontrolled blood sugars, neck pain, fatigue and shortness of breath with walking uphill. His weight was recorded at 436 pounds, which is the highest noted. The lowest weight documented over the next six and one-half months was 412 pounds. Dr. Saxe continued to treat plaintiff for neck pain, uncontrolled diabetes, significant pain in the left knee and right ankle, obesity and depression.

Dr. Saxe did not make detailed exam findings at every visit but did note on one occasion that plaintiff had "markedly" limited range of motion in his neck, especially with turning his head to the left, and spasm as well. Some improvement was reported on January 8, 2004, the date of the most recent visit with this physician, due to plaintiff having had physical therapy. He

---

[1] This finding had the effect of shifting a burden of production to the Commissioner with respect to other work plaintiff was capable of performing. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

[2] 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 2.

testified at the hearing, however, that his course of therapy had ended and he could not afford additional treatment.  Unfortunately, there are no opinions or comments from plaintiff's treating physician relative to his ability to work and there is no indication the Commissioner sought any input from him.

      The Commissioner sent plaintiff to Rodolfo Gobunsuy for a consultative evaluation on April 30, 2003, prior to the first reports from Dr. Saxe.  Complaints were similar, i.e., neck, knee, ankle pain, problems with diabetes and chest pain.  Plaintiff indicated, as he did at the hearing and in reports he completed, that knee and ankle pain were precipitated by prolonged standing, walking and going up and down steps.  This examiner did not detect tenderness in the cervical or lumbar spine, although range of motion was somewhat restricted.  Plaintiff reported soreness in the left shoulder and Dr. Gobunsuy observed prominence in AC joint but no deformity.  Range of motion was limited, however.  There was a scar on the left hand and restricted movement of the second and third fingers.  The range of motion chart also reflects that plaintiff could "barely" make a fist with this hand, suggesting it must have been weaker than the right, which was his dominant hand.  The report reflects plaintiff had no difficulty writing or picking up a coin with his right hand; however, the left hand was apparently not even tested, which also suggests an obvious limitation of function in this hand.  X-ray of the right knee was consistent with degenerative arthrosis.  Crepitation and soreness were observed in the left knee with restricted range of motion.  The right ankle was tender and an X-ray showed a small spur at the insertion of the Achilles tendon.  Dr. Gobunsuy diagnosed indications of early degenerative joint disease in the knee and ankle and possible degenerative arthritis in the cervical spine

In assessing residual functional capacity, the administrative law judge observed that the state agency medical advisors' assessments were the only opinions on this issue in the record. The earlier of these assessments, dated May 7, 2003, reflects findings of an ability to perform light work with occasional climbing, balancing, stooping, kneeling, crouching and crawling, no climbing of ladders, ropes or scaffolds, and avoidance of concentrated exposure to extreme cold and hazards. The second assessment, dated July 16, 2003, reflects a finding of ability to perform medium level work with occasional climbing, balancing, stooping, kneeling, crouching and crawling. It is likely that both of these assessments were submitted before receipt of any of Dr. Saxe's treatment notes. The administrative law judge determined that the earlier of the assessments was more consistent with the evidence and adopted it. He added that plaintiff could frequently push or pull with the lower extremities and use foot controls, occasionally lift or reach overhead, and could not perform "forcible, repetitive turning of the head from side to side."

While this residual functional capacity assessment certainly appears to take account of a number of the limitations imposed by plaintiff's impairments, the Court concludes that the administrative law judge has not given sufficient consideration to several of plaintiff's medical problems. First, his left hand difficulties are clearly more significant that the administrative law judge found. Plaintiff testified that he could not use that hand to do any lifting but could only support the right hand. Also, as noted, he apparently has diminished gripping ability and would have problems grasping objects, pushing/pulling, manipulating and possibly handling. This was not taken into account by the administrative law judge. In fact, he merely concluded that "there is no showing that the claimant's respiratory problems or limited motion in two fingers on his left, nondominant, hand affect his ability to work." This finding is clearly not supported by the evidence.

Also, in addition to the reports from Dr. Saxe reflecting pain and restricted range of motion in the neck and pain in the knees and ankle, Dr. Gobunsuy detected range of motion limitation, pain and/or tenderness in all of these areas with X-ray evidence confirming abnormalities in the knee and ankle. Plaintiff described the pain in these areas as exacerbated by prolonged standing and walking. Despite this testimony and the X-ray and clinical findings, however, the administrative law judge failed to assess any limitations on standing or walking which are clearly established. He also failed to include such limitations in his questions to the vocational expert.

Given the deficiencies noted, the Court concludes remand is necessary for a re-evaluation of plaintiff's residual functional capacity. The administrative law judge should seek input from plaintiff's treating physician as to the effect of his impairments on his ability to work. If such opinion cannot be obtained, then a consultative evaluation and accompanying assessment could be considered. The parties should also be permitted to submit additional evidence.

On the basis of the foregoing, it is **ORDERED** that this case be remanded to the Commissioner for further proceedings consistent with this Memorandum Order. All matters in this case being concluded, it is **ORDERED** that this case be dismissed and retired from the Court's docket.

The Clerk is directed to transmit a copy of this Memorandum Order to all counsel of record.

ENTER: August 9, 2006

_____
MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE

5